Daniel J. Weintraub – Bar #132111
James R. Selth – Bar #123420
**WEINTRAUB & SELTH, APC**
11766 Wilshire Boulevard, Suite 450
Los Angeles, CA 90025
Telephone: (310) 207-1494
Facsimile: (310) 442-0660
Email: dan@wsrlaw.net

General Bankruptcy Counsel to
Chapter 11 Debtor and Debtor in Possession,
424 GROUP, INC.

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:21-bk-19407-SK |
| 424 GROUP, INC., | Chapter 11 – Subchapter V |
| Debtor and Debtor in Possession. | **MOTION FOR ORDER APPROVING THE SALE OF THE DEBTOR'S CLAIMS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §363(b)(1) AND (f)(2); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF KATRINA SIRDOFSKY, DANIEL J. WEINTRAUB IN SUPPORT THEREOF** |
| | **[Declaration of Chiouyi Chang filed concurrently herewith]** |
| | Hearing:<br>Date:  November 23, 2002<br>Time:  9:00 a.m.<br>Place:  Courtroom 1575<br>255 E. Temple St.<br>Los Angeles, CA 90012 |

**TO THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY**

**JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND OTHER PARTIES IN**

**INTEREST:**

**PLEASE TAKE NOTICE** that on November 23, 2022 at 9:00 a.m., before the Honorable Sandra R. Klein, United States Bankruptcy Judge, in Courtroom 1575, located at 255 East Temple Street, Los Angeles, California, 424 Group, Inc., the debtor and debtor in possession herein ("Debtor"), will and does hereby move the Court for an Order approving the Debtor's *Motion for Order Approving the Sale of the Debtor's Claims Free and Clear of Liens, Claims, Interests, and Encumbrances Pursuant to 11 U.S.C. § 363(b)(1) and (f)(2)* ("Motion").

This Motion is brought pursuant to 11 U.S.C. §§ 363 (b)(1) and (f)(2) on the grounds that the Debtor has determined that it is in the best interest of the estate and its creditors to seek a private sale ("Sale") of its claims, causes of action and defenses against 380 Group, LLC and all other claims held by the Debtor (collectively, the "Claims") as more particularly described in "Exhibit 1" to the *Claim Purchase Agreement* ("CPA") which is attached as **Exhibit 1** to the Declaration of Katrina Sirdofsky ("Sirdofsky Declaration").  The Sale excludes claims listed in the Debtor's Schedules of Assets and Liabilities, as amended or may be amended, and interests, that (a) any affiliate of the Debtor may have in or against the Debtor or the Debtor's bankruptcy estate; (b) Katrina Sirdofsky ("Sirdofsky"), the Katrina Sirdofsky 1998 Family Trust/U/D/T/ May 7, 1998, or 424 Group Wholesale, Inc., may have in or against the Debtor, the Debtor's bankruptcy estate or each other; and (c) that Sirdofsky may have against Guillermo Andrade ("Andrade") and vice versa, including but not limited to claims arising under or related to the Marital Settlement Agreement between Sirdofsky and Andrade.  The CPA also specifically provides that nothing stated in the CPA precludes the Debtor from using Estate's affirmative claims and defenses to object to any proof of claims filed in the Chapter 11 case.

The proposed buyer of the Claims, Lightwork Worldwide LLC ("Buyer"), is the party that previously acquired substantially all of the Debtor's assets pursuant to that certain *Order Approving the Sale of Substantially All Assets of the Estate Free and Clear of Liens, Claims, Interests and Encumbrances Pursuant to 11 U.S.C. §363(b)(1) and (f)(2)* entered on June 30, 2022 ("Primary Asset Sale", Doc. No. 112).

The Debtor and Buyer executed the CPA dated as of October 10, 2022, providing for the sale and acquisition of the Claims for the sum of Four Hundred Twenty-Five Thousand Dollars

($425,000.00) cash (the "Purchase Price"), free and clear of all liens, claims, encumbrances and other interests pursuant to Sections 105, 363, and 365 of the Bankruptcy Code.   The bar date in this case has passed and the Debtor has no secured creditors.

The Motion is based upon the Notice of Motion filed concurrently herewith, the Notice of Sale of Estate Property filed with the Clerk of the Court, the Memorandum of Points and Authorities and Declarations of Katrina Sirdofsky, Daniel J. Weintraub and Chiouyi Chang and all pleadings, papers and records on file with the Court and other evidence and argument, oral or documentary, as may be presented to the Court at the time of the hearing on the within Motion.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order in form and substance substantially similar to the proposed Order attached as "Exhibit 2" to the Claim Purchase Agreement:

1.    Approving this Motion and authorizing the sale of the Claims as defined herein to Buyer pursuant to the terms of that certain Claim Purchase Agreement attached as **Exhibit 1** to the Declaration of Katrina Sirdofsky.

2.    Authorizing, with appropriate findings, the sale of the Claims to the Buyer, free and clear of all claims, liens, security interests, charges, encumbrances, adverse interests of any kind and all other liabilities, including, without limitation, successor liabilities pursuant to Section 363 of the Bankruptcy Code;

3.    Finding that the Buyer has acted in good faith and is entitled to the protections of 11 U.S.C. ´363(m);

4.    With appropriate findings of the Court regarding the adequacy of notice to creditors and parties in interest relating to the within Motion;

5.    Waiving the fourteen (14) day stay of order provided in Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure; and

//

//

//

//

3822.02    MOTION FOR ORDER APPROVING SALE OF DEBTOR'S CLAIMS

6.    Granting such other and further relief as is requested and as the Court deems just and appropriate.

Dated:  October 21, 2022                          WEINTRAUB & SELTH, APC


By /s/ Daniel J. Weintraub
    Daniel J. Weintraub
    James R. Selth
    Attorneys for Debtor and
    Debtor-in-Possession,
    424 GROUP, INC.

3822.02                    MOTION FOR ORDER APPROVING SALE OF DEBTOR'S CLAIMS

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

Debtor hereby moves this Court for an order authorizing the Debtor to sell its remaining assets to Lightwork Worldwide LLC ("Buyer"), the buyer of the Debtor's assets under the *Order Approving the Sale of Substantially All Assets of the Estate Free and Clear of Liens, Claims, Interests and Encumbrances Pursuant to 11 U.S.C. §363(b)(1) and (f)(2),* entered on June 30, 2022 ("Primary Asset Sale", Doc. No. 112)., in accordance with the *Claim Purchase Agreement* ("CPA") attached to the Declaration of Katrina Sirdofsky as **Exhibit 1.**

The assets being sold are generally described as the claims, causes of action and defenses against 380 Group, LLC and other claims held by the Debtor (collectively, the "Claims") and are particularly described in "Exhibit 1" to the CPA.[1]  The Claims do not include any claims listed in the Debtor's Schedules of Assets and Liabilities, as amended or may be amended, and interests that: (a) any affiliate of the Debtor may have in or against the Debtor or the Debtor's bankruptcy estate; (b) Katrina Sirdofsky ("Ms. Sirdofsky"), the Katrina Sirdofsky 1998 Family Trust/U/D/T/ May 7, 1998, or 424 Group Wholesale, Inc., may have in or against the Debtor, the Debtor's bankruptcy estate or each other; and (c) that Sirdofsky may have against Guillermo Andrade ("Mr. Andrade") and vice versa, including but not limited to claims arising under or related to the Marital Settlement Agreement between Ms. Sirdofsky and Mr. Andrade, all of which are specifically excluded from the Sale.  The CPA also specifically provides that nothing stated in the CPA precludes the Debtor from using Estate's affirmative claims and defenses to object to any proof of claims filed in the Chapter 11 case.

The Debtor has been marketing the Claims for sale both before and since the Primary Asset Sale and has engaged in negotiations with two potential buyers.  Only Buyer has submitted a written offer to purchase the Assets.  Given that Buyer previously purchased substantially all of the assets comprising the Debtor's business operations and that the claims being sold relate to the

---

[1] In the event of an inconsistency between the descriptions set forth in this Motion and the terms of the CPA, the CPA shall govern.

Debtor's business, Buyer is the natural buyer for the Assets.

The purchase price of Four Hundred Twenty-Five Thousand Dollars cash ($425,000) represents the highest and best written offer received by the Debtor and, pursuant to the Debtor's Second Amended Plan of Reorganization for Small Business Under Chapter 11 [Doc. No. 176] puts the estate in a position to pay all estimated administrative and priority claims; and pay 100% of all non-insider allowed unsecured claims.  Buyer has executed the CPA and made the deposit called for by the CPA to counsel's trust account.

## II.

## FACTUAL BACKGROUND

### A.        General Case Background

On December 23, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Court").  The Debtor continues to operate its business and manage its affairs as a debtor in possession in pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtor elected to proceed under Subchapter V (Small Business Reorganization) of the Bankruptcy Code and qualifies as a debtor under Subchapter V given that it has secured and unsecured non-contingent and liquidated debts of less than $7,500,000.

### B.        Brief History of the Debtor and Its Operations

The Debtor is a California corporation formed in 2009 and is owned by Katrina Sirdofsky (51%) and Guillermo Andrade (49%).   As noted in Section II(E) below, a settlement was reached between the Debtor, 424 Group Wholesale, Inc., Ms. Sirdofsky and Guillermo Andrade (the "Global Settlement"), which has been approved by the Court.  Pursuant to the Global Settlement, Mr. Andrade assigned to Ms. Sirdofsky his equity interests in the Debtor.  Ms. Sirdofsky is the Debtor's President and CEO.  Mr. Andrade resigned his position with the company in December 2021.  Prior to the sale of its assets as set forth below, the Debtor licensed its clothing designs throughout the world and operated a brick and mortar retail store and on-line shopping website https://shop.fourtwofouronfairfax.com.

The Debtor sought bankruptcy relief after the Covid-19 pandemic severely impacted its business affairs and it fell behind with several vendors and the landlord for its Los Angeles retail store. The Chapter 11 filing prevented the foreclosure of some of the Debtor's most valuable intellectual property, specifically a 90% interest in Italian trademark number 302017000022094 and European Union trademarks numbers 017961030 and 016411142 which were owned by the Debtor. These trademarks and the Debtor's other intellectual property were the most valuable assets of the Chapter 11 bankruptcy estate.

### C.    The Sale of the Debtor's Assets

After negotiating with several interested purchasers, the Debtor filed its *Motion for Order Approving Bidding Procedures* on May 11, 2022 [Doc. No. 65], which was granted by Order entered June 2, 2022 [Doc. No. 92].  On June 1, 2022, the Debtor filed its *Motion for Order Approving the Sale of Substantially All Assets of the Estate Free and Clear of Liens, Claims, Interests and Encumbrances, etc*. ("Sale Motion", Doc. No. 85).  On June 30, 2022, the Court entered its Order approving the Sale Motion ("Sale Order", Doc. No. 112), pursuant to which the assets identified in the Asset Purchase Agreement ("APA") were sold to Lightwork Worldwide LLC ("Buyer") following an auction conducted by the Debtor's counsel.  The sale to Buyer included only the assets listed in Exhibit 1 of the APA and did not include the Debtor's cash, avoiding power claims and certain other claims and causes of action.  Among these claims were the Debtor's claim against 380 Group, LLC ("380 Group") arising from and related to a letter of intent dated as of July 1, 2020, in which the Debtor entered in an agreement to license its intellectual property to 380 Group.  At the Closing, Buyer paid the Debtor the sum of $1,600,000 in cash.  See the Notice of Sale With Copy of Asset Purchase Agreement filed June 24, 2022 [Doc. No. 108].

### D.    The Status of Debtor's Subchapter V Plan

To comply with the Subchapter V Plan deadline of 11 U.S.C. § 1189(b), the Debtor filed its original *Subchapter V Plan of Reorganization on March 22, 2022* [Doc. No. 36].  At that time, the sale of the Debtor's assets was still in its preliminary stages involving discussions with interested buyers.

//

The Debtor recently filed its *Second Amended Subchapter V Plan of Reorganization* [Doc. No. 176]. A hearing on confirmation of the Debtor's Plan is scheduled for December 7, 2022. As the Debtor has sold substantially all of its assets, it is a liquidating Plan. The Debtor has investigated and will object to those claims which it believes are not warranted.

### E. The Debtor's Litigation With Andrade

The Debtor and 424 Wholesale, Inc. (the "Companies") asserted claims against Mr. Andrade relating to, among other things, his employment with the Companies, his activities as a co-owner and officer of the Companies, and activities as an independent designer or consultant during the time that the Companies operated the 424 Group business. On December 21, 2021, the Companies filed a Complaint in the Marin County Superior Court styled *424 Group, Inc. d/b/a FourTwoFour on Fairfax; 424 Group Wholesale, Inc. v. Guillermo Andrade aka Mynor Guillermo Andrade Ortega, an individual; and Does 1 through 10, inclusive*, Case No. CIV 2104249, alleging claims of breach of employment contract; breach of fiduciary duty; violation of unfair competition law; embezzlement; misappropriation of trade secrets; fraud; intentional misrepresentation; and temporary restraining order, preliminary and permanent injunctions.

The Debtor, 424 Group Wholesale, Inc., Ms. Sirdofsky and Mr. Andrade reached a settlement (the "Global Settlement") of their disputes and on October 11, 2022, the Court entered its *Order Granting the Debtor's Motion to Approve Compromise of Controversy Pursuant to Fed. R. Bankr. P. 9019 Between the Chapter 11 Debtor and Debtor in Possession and Guillermo Andrade* [Doc. No. 183]. However, as noted in Section 5(B) below, the Global Settlement becomes effective only upon the entry of the Order approving the Global Settlement **and** an Order approving the Debtor's sale of the Claims which sale is the subject of this Motion.

### III.

### PROPOSED SALE

### A. Purchase Price

The purchase price (the "Purchase Price") for the Claims is as follows:

Four hundred, twenty-five thousand dollars ($425,000) in cash, payable as follows:

i.     Deposit: $100,000.00 paid upon execution of this Agreement, which will be applied to the Purchase Price at closing (the "Deposit"). The Deposit is non-refundable except in the event that the Agreement and Sale are terminated as a result of Seller's breach, in each which event, the Deposit shall be returned to Buyer. Seller acknowledges receipt of the Deposit from Buyer. The Deposit shall not be subject to any lien, attachment, trustee process, or any other judicial process of any creditor of Seller or Buyer.

ii.     Balance of Purchase Price. The balance of the Purchase Price, minus the amount of the Deposit, shall be sent by cashier's check or a wire transfer to the attorney-client trust account of Weintraub & Selth, APC, one business day prior to the Closing Date.

The sale is to be a private sale free and clear of all liens, claims, encumbrances and other interests pursuant to sections 105, 363, and 365 of the Bankruptcy Code, with liens to attach to the proceeds in the same order and with the same validity and extent of the pre-petition liens in such Claims. The Buyer's offer is for a private sale with no overbids.

Buyer has wired a Deposit of $100,000, to the attorney client trust account of Weintraub & Selth, APC. If the transaction closes as contemplated, the Deposit shall be credited to the Purchase Price at Closing. If the Buyer fails to fulfill its obligations herein, the Deposit made by Buyer shall be forfeit and retained by the Debtor's estate.

**B.**     **The Assets Sold and the Closing**

The following is a summary of the proposed material terms of the sale of the Property to Buyer pursuant to the CPA. To the extent of any inconsistency, the CPA controls:

1.     **ASSETS**. Buyer shall purchase the Debtor's interest in the Claims described in "Exhibit 1" of the CPA as:

"any claim, cause of action, or right to recovery by the Debtors or its Affiliates solely to the extent related or pertaining to the Debtor or its business, including without limitation, from any Legal Proceeding, including but not limited to the right to monetary benefits, or benefits that may be monetized, from settlements, judgments, or any other form of resolution of any Legal Proceeding or the operative facts alleged in any Legal Proceeding. Further, the Assets includes all defenses, rights of set-off, counter-claims, causes of action, and litigation rights existing as of the Effective Time in favor of Seller against third parties arising out of and relating to the Assets, whether choate or inchoate, known or unknown, contingent or non-contingent. Notwithstanding the foregoing, the Assets shall not include any interests (including equity interests), claims, demands, rights, causes or causes of action, defenses, liens, and cross claims, including, without limitation, any claims

scheduled on the Debtor's Schedules of Assets and Liabilities, as
amended or may be amended (collectively, the "Preserved Rights") that
(a) any Affiliate may have in or against the Debtor or the Debtor's
bankruptcy estate; (b) Katrina Sirdofsky ("Sirdofsky"), the Katrina
Sirdofsky 1998 Family Trust/U/D/T/ May 7, 1998, or 424 Group
Wholesale, Inc., may have in or against the Debtor, the Debtor's
bankruptcy estate or each other; and (c) that Sirdofsky may have
against Guillermo Andrade and vice versa, including but not limited to
claims arising under or related to the Marital Settlement Agreement
between Sirdofsky and Andrade. Additionally, nothing herein shall
preclude the Debtor, Sirdofsky, 424 Group Wholesale, Inc. or an
Affiliate from defensively objecting to any proofs of claim filed in the
Chapter 11 case, including asserting in such claim objection that a
creditor may have committed fraud upon or violated the law with
respect to the Debtor and that such conduct should be an offset to,
reduce or eliminate the bankruptcy estate's liability to such creditor in
respect of its claims.  In no event shall the Debtor seek an award of
damages or affirmative relief against such creditor.

(collectively, the "Claims").

2.    **CLOSING**.  Subject to the terms and conditions of the CPA, the closing of the sale

of the Claims contemplated by the CPA (the "Closing") shall take place on or before the fifth (5th)

business day following the entry of an order of the Bankruptcy Court approving the Debtor's

Motion for an Order Approving the Claim Purchase Agreement confirming the sale of the Claims to

Buyer.


**IV.**

**THE PROPOSED SALE SHOULD BE APPROVED**

**PURSUANT TO 11 U.S.C. §363(b)(1) AND 11 U.S.C. §363(f)**

A review of the applicable cases interpreting Sections 363(b)(1) and (f) of the Bankruptcy

Code and, in light of the aforementioned facts, indicates that a sound basis exists for Court

approval of this sale.

A.    **The Sale Should be Approved Under Section 363(b)(1)**

Section 363(b)(1) of the Bankruptcy Code empowers a debtor in possession to "sell . . .

other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). The

authority to sell assets conferred upon a debtor by Section 363(b)(1) "include[s] a sale of

substantially all the assets of an estate." Otto Preminger Films, Ltd. v. Qintex Entm't., Inc. (In re Qintex Entm't, Inc.), 950 F.2d 1492, 1495 (9th Cir. 1991); see also, In re Anchor Exploration Co., 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) (court should have wide latitude to approve sale under Section 363(b)). A bankruptcy court's power to authorize a sale under Section 363(b) is to be exercised at the court's discretion. In re WPRV-TV, 983 F.2d 336, 340 (1st Cir. 1993), New Haven Radio, Inc. v. Meister (In re Martin-Trigona), 760 F.2d 1334, 1346 (2d Cir. 1985), Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1069 (2d Cir. 1983); Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390-91 (6th Cir. 1986).

In the Ninth Circuit, "cause" exists for authorizing a sale of estate assets if it is in the best interest of the estate and a business justification exists for authorizing the sale. In re Huntington, Ltd., 654 F.2d 578 (9th Cir. 1981); In re Walter, 83 B.R. 14, 19-20 (9th Cir. B.A.P. 1988).

In evaluating the propriety of a sale of property of the estate, courts have evaluated whether: (1) there be a sound business reason for the sale; (2) accurate and reasonable notice of the sale be given to interested parties; (3) the price to be paid is adequate i.e., fair and reasonable; and (4) the parties to the sale have acted in good faith. Titusville Country Club v. Pennbank (In re Titusville Country Club), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); see also, In re Walter, 83 B.R. at 19-20.

An examination of each of the above four factors shows that the sale as proposed herein should be approved.

1. Sound Business Justification.

The Ninth Circuit Bankruptcy Appellate Panel in Walter v. Sunwest Bank (In re Walter), 83 B.R. 14,19 (9th Cir. BAP 1988) adopted a flexible case-by-case test to determine whether the business purpose for a proposed sale justifies disposition of property of the estate under Bankruptcy Code Section 363(b) as follows:

> "Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in Lionel, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of

> reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge."

In re Walter, 83 B.R. at 19-20, citing In re Continental Air Lines, Inc. 780 F.2d 1223, 1226 (5th Cir. 1986).

The facts of this case support the Debtor's business decision to consummate a sale of the Claims and is in the best interest of the Debtor's creditors.  The Debtor has ceased operations and sold substantially all its assets to Buyer under the Primary Asset Sale.  The Claims and cash on hand are its only remaining assets.  It makes more sense to sell the Claims for a guaranteed cash payment than incurring the risk, delay and administrative expenses which would be involved in litigating them.  Perhaps more importantly, the Sale will provide sufficient cash for the Estate to be in a position to pay all estimated administrative and priority claims and all non-insider allowed unsecured claims in full.  Thus, the Debtor submits that the sale is justified by a sound business purpose.

2.  Accurate and Reasonable Notice.

Pursuant to §363(b)(1), a debtor in possession must give notice of any sale of property of the estate.  Transactions not in the ordinary course of business are generally governed by Federal Rule of Bankruptcy Procedure 6004.  Rule 6004(a) refers, in turn, to Rule 2002(a)(2), which requires a twenty-one (21) day notice period for any "proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown, shortens the time…" FRBP 2002(a).

Concurrently herewith, the Debtor is mailing notice to all creditors and parties in interest of the proposed sale.  Thus, the Debtor has satisfied the notice requirements.

3.  Fair and Reasonable Price.

As set forth in the attached Declaration of Daniel J. Weintraub, Mr. Weintraub contacted all parties who he thought might be interested in purchasing the Claims, inquiring as to their

interest in purchasing the Claims.  One other party expressed interest in bidding and Mr. Weintraub provided that person with access to a Drop Box containing several documents related to the Debtor's claims against 380 Group, LLC.   Mr. Weintraub also offered to provide any and all other information the potential buyer might request.  That party ultimately declined to submit an offer.

Mr. Weintraub was responsible for negotiating the terms of sale to Buyer.  The negotiations included several calls and email with Buyer's counsel, the negotiation of several drafts of the Claim Purchase Agreement ("CPA") and one meeting with Buyer's principal and its counsel.  Mr. Weintraub consistently sought to obtain the highest and best price possible for the Claims and the offer from Buyer is the highest and best price he was able to obtain for the Claims. Finally, the Buyer's offer was conditioned upon the Sale being a private sale, and as the Debtor and its counsel were not aware of any other possible interested purchase of the Claims.  Additionally, Buyer explained that there could be issues related to the further assurances clause in the initial purchase agreement if the Claims were sold to a different buyer. Due to these reasons and the need to close the Sale promptly and without litigation, the Debtor agreed to this condition.

4.   Good Faith.

Finally, the Sale is proposed in good faith.  The "good faith" requirement focuses principally on the element of special treatment of a debtor's insiders in the sale transaction. Industrial Valley Refrig. And Air Cond. Supplies, Inc, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987). Here, the Buyer is not an insider or affiliate of the Debtor, and the negotiations between the Buyer and Debtor regarding the proposed Sale were at arms-length while both parties were represented by independent counsel and no collusion was involved.  The Debtor and Ms. Sirdofsky who is the Debtor's only officer and director do not have any other relationship with Buyer.  The CPA was negotiated with the goal of maximizing recovery to creditors and interest holders.

**B.    The Motion Should Be Granted Under 11 U.S.C. Section 363(f)**

Section 363(f) of the Bankruptcy Code describes the circumstances under which a debtor in possession may sell property of the estate free and clear of any interest of third parties in such property.  Section 363(f) provides, in pertinent part:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

Section 363(f) of the Bankruptcy Code was drafted in the disjunctive. Thus, a debtor need only meet the provisions of one of the five subsections of section 363(f) in order for a sale of property to be free and clear of all liens, claims and interests.

Debtor's only secured creditor at the time the bankruptcy case was filed was a lien under Italian law in favor of Twentyfourseven s.r.l., in the approximate amount of €57,090.37, which was paid in full pursuant to the Primary Asset Sale. The bar date has passed and the Debtor has no secured creditors.

All creditors will receive notice of the proposed sale and will have an opportunity to respond to this Motion. Moreover, if any other individual or entity believes that it has a claim or interest in the Assets, it will have an opportunity to assert such claim or interest in response to this Motion. Therefore, based upon the authority set forth above, the Debtor requests that the Court approve the Sale free and clear of all liens, claims, encumbrances and/or interests of any parties who may assert such liens, claims, encumbrances and/or interests against the Assets and who do not file a timely objection to the proposed sale by deeming all such parties to have consented to the proposed sale pursuant to Section 363(f)(2) of the Code.

//

//

//

//

3822.02    MOTION FOR ORDER APPROVING SALE OF DEBTOR'S CLAIMS

# V.

## THE SALE IS IN THE BEST INTERESTS OF THE ESTATE AND THERE ARE COMPLLING REASONS FOR AN IMMEDIATE PRIVATE SALE TO BUYER

### A.    The Sale as an Exercise of Business Judgment

The Debtor has sound business purposes and justifications for entering into the CPA given that: (a) consummation of the Sale, along with the proposed potential subordination of the unsecured claims of Katrina Sirdofsky and 424 Group Wholesale, Inc., on the conditions set forth in "Exhibit 6" to the Debtor's *Second Amended Plan of Reorganization* [Doc. No. 176] are projected to yield a one hundred percent (100%) distribution to allowed non-insider general unsecured claims; and (b) the Sale avoids the costs, risks and delays associated with litigating the Claims being sold to Buyer.

### B.    Compelling Reasons for an Immediate Private Sale

As noted in Section 2(E) above, the estate is the Plaintiff is a lawsuit in the Marin County Superior Court against Guillermo Andrade and has also commenced discovery under Bankruptcy Rule 2004 against 380 Group, LLC and Guillermo Andrade.  The Debtor, 424 Group Wholesale, Inc., and Katrina Sirdofsky and Andrade reached a global settlement of their disputes and the Court entered its Order Granting the Debtor's Motion to Approve Compromise of Controversy Pursuant to Fed. R. Bankr. P. 9019 Between the Chapter 11 Debtor and Debtor in Possession and Guillermo Andrade [Doc. No. 183] on October 11, 2022.  The Settlement Agreement becomes effective only upon the entry of final, non-appealable orders of the Bankruptcy Court approving the Settlement Agreement and approving the Debtor's sale of the 380 Claims.  While the Settlement Agreement has been approved by the Court, the sale of the 380 Claims must also be approved for the settlement with Mr. Andrade to become effective.

Also, as set forth above, the consummation of this Sale will satisfy one condition precedent to the subordination of the insider claims of Ms. Sirdofsky and 424 Group Wholesale, Inc., (Condition No. 1 - that the Debtor consummate the sale of the 380 claims for at least $425,000 prior to the Plan confirmation hearing), and very likely a second condition (Condition No. 4 – that a minimum of $1,400,000 be available for distribution under the Plan after payment of all allowed

secured, priority and administrative claims).  The other two conditions to subordination are that the Plan be confirmed by December 15, 2022, and that the Debtor strictly comply with Section 4.01 of the Plan which pertains to the making of the initial and final distributions to general unsecured creditors under the Plan.   Prompt approval of the Sale is therefore crucial as it greatly assists the Debtor in meeting the conditions of the Plan that trigger subordination of the insider claims, which in turn will result in the payment of a dividend of one hundred percent (100%) to allowed non-insider general unsecured creditors.

The Debtor does not wish to incur unnecessary administrative expense claims of professionals.  The prompt closing of the Sale will allow the Estate to stop incurring significant additional administrative expenses which would necessarily and immediately result from the Debtor continuing its pending litigation and the immediate closing of the Sale will result in the liquidation of the estate's sole remaining assets and allow the prompt and complete administration of the Bankruptcy Case.

Private sales are expressly contemplated by the bankruptcy rules. See  Fed. R. Bankr. P. 6004(f)(1), which provides that "(a)ll sales not in the ordinary course of business may be by private sale or by public auction."  It is within the trustee's discretion whether a private sale or public auction is appropriate.  In re Alisa Partnership, 15 B.R. 802 (Bankr. D. Del., 1981).  See also In re 160 Royal Palm, LLC, 600 B.R. 119 (S.D. Fla. 2019), holding that, "[t]he use of a private sale, to take advantage of the offer made by [Buyer], was within the Debtor's business judgment, and the Court sees no reason to supplant its judgment for the business judgment determination of the Debtor."

While the Debtor could seek to establish bidding procedures for a public sale, given the lack of any other interested purchasers for the Claims, Buyer's condition of a private sale and the need to approve the Sale before the Plan Confirmation deadline, the Debtor believes that the offer is fair reasonable, and submits that there is a sound business justification for selling the Claims for $425,000 to Buyer.

//

//

# VI.

## THE COURT HAS THE DISCRETION TO AND SHOULD WAIVE THE
## FOURTEEN-DAY PERIOD FOR THE EFFECTIVENESS OF A SALE ORDER

Rule 6004(h) of the Federal Rules of Bankruptcy Procedure provides: "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

The court can eliminate or reduce the 14-day stay period upon a showing that there is a sufficient business need to necessitate an immediate closing within the 14-day period and the interests of any objecting party, taking into account the likelihood of success on appeal, are sufficiently protected. *Collier on Bankruptcy* ¶ 6004.11. In re Perry Hollow Mgmt. Co., Inc., 297 F.3d 34, 41 (1st Cir. 2002), the court affirmed the bankruptcy court's decision to waive the waiting period of Rule 6004(g) (now (h)). The appellate court found that the bankruptcy court acted properly within its discretion to waive the stay where the evidence at the hearing established that the sale price was reasonable, the buyer was ready to complete the sale the next day and there would be a charge for storage if there were a delay.

Similarly, in Hower v. Molding Sys. Eng'g Corp., 445 F.3d 935, 938 (7th Cir. 2006), the court affirmed the elimination of the stay where the debtor was down to its last five dollars, had dozens of employees who needed to be paid and a purchaser who made $250,000 available to keep operations going. In re Nature Leisure Times, LLC, 59 C.B.C.2d 121, 2007 Bankr. LEXIS 4333 (Bankr. E.D. Tex. Dec. 19, 2007), the court noted that it was appropriate to eliminate the waiting period under Rule 6004(h) because the estate had negative cash flow and the trustee should not be required to continue to operate the estate with third party moneys.

Similarly, here the need to proceed sooner with the sale outweighs any potential objecting party's interests. As set forth above, the Sale needs to be approved before the Plan Confirmation deadline in order to meet the condition for subordination of the insider claims. Accordingly, the Debtor request that the Court order that the sale may be effectuated immediately upon entry of the order.

# VII.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order in form and substance similar to the proposed Order attached as Exhibit 2 to the Claim Purchase Agreement:

1.     Approving this Motion and authorizing the sale of the Claims as defined herein to Buyer pursuant to the terms of that certain Claim Purchase Agreement attached as **Exhibit 1** to the Declaration of Katrina Sirdofsky.

2.     Authorizing, with appropriate findings, the sale of the Claims to the Buyer, free and clear of all claims, liens, security interests, charges, encumbrances, adverse interests of any kind and all other liabilities, including, without limitation, successor liabilities pursuant to Section 363 of the Bankruptcy Code;

3.     Finding that the Buyer has acted in good faith and is entitled to the protections of 11 U.S.C. ´363(m);

4.     With appropriate findings of the Court regarding the adequacy of notice to creditors and parties in interest relating to the within Motion;

5.     Waiving the fourteen (14) day stay of order provided in Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure; and

6.   Granting such other and further relief as is requested and as the Court deems just and appropriate.

Dated:  October 24, 2022                           WEINTRAUB & SELTH, APC


                                                   By /s/ *Daniel J. Weintraub*
                                                      Daniel J. Weintraub
                                                      James R. Selth
                                                      Attorneys for Debtor and
                                                      Debtor-in-Possession,
                                                      424 GROUP, INC.

3822.02                    MOTION FOR ORDER APPROVING SALE OF DEBTOR'S CLAIMS

## <u>DECLARATION OF KATRINA SIRDOFSKY</u>

I, Katrina Sirdofsky, declare as follows:

1.      I am an individual over the age of eighteen and am the President and CEO of 424 Group, Inc., the debtor and debtor in possession herein ("<u>Debtor</u>").  Except as otherwise stated herein, each of the facts contained in this declaration is based on my personal knowledge and my review of the books and records of the Debtor kept in the ordinary course.  If called as a witness, I could and would competently testify thereto.

2.      On December 23, 2021 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "<u>Court</u>").  The Debtor continues to operate its business and manage its affairs as a debtor in possession in pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtor is a California corporation formed in 2009 and is owned by myself (51%) and Guillermo Andrade (49%).  I am the Debtor's President and CEO.  Mr. Andrade resigned his position with the company in December 2021.  Prior to the sale of its assets as set forth below, the Debtor licensed its clothing designs throughout the world and operated a brick and mortar retail store and on-line shopping website https://shop.fourtwofouronfairfax.com.

4.      Debtor sought bankruptcy relief after the Covid-19 pandemic severely impacted its business affairs and it fell behind with several vendors and the landlord for its Los Angeles retail store. The Chapter 11 filing prevented the foreclosure of some of Debtor's most valuable intellectual property, specifically a 90% interest in Italian trademark number 302017000022094 and European Union trademarks numbers 017961030 and 016411142 which were owned by Debtor. These trademarks and Debtor's other intellectual property were the most valuable assets of the Chapter 11 bankruptcy estate.

5.      After negotiating with several interested purchasers, Debtor filed its Motion for Order Approving Bidding Procedures on May 11, 2022, which was granted by Order entered June 2, 2022.  On June 1, 2022, Debtor filed its Motion for Order Approving the Sale of Substantially All Assets of the Estate Free and Clear of Liens, Claims, Interests and Encumbrances, etc. ("<u>Sale</u>

3822.02              MOTION FOR ORDER APPROVING SALE OF DEBTOR'S CLAIMS

Motion).  On June 30, 2022, the Court entered its Order approving the Sale Motion, pursuant to

which the assets identified in the Asset Purchase Agreement ("APA") were sold to Lightwork

Worldwide LLC ("Buyer") following an auction conducted by Debtor's counsel ("Sale Order").

The sale to Buyer included only the assets listed in Exhibit 1 of the APA and did not include

Debtor's cash, avoiding power claims and other claims and causes of action.  One of these claims

was Debtor's claim against 380 Group, LLC ("380 Group") arising from a letter of intent dated as

of July 1, 2020, in which the Debtor entered in an agreement to license its intellectual property to

380 Group.  At the Closing, Buyer paid Debtor the sum of $1,600,000 in cash.

6.     To comply with the Subchapter V Plan deadline of 11 U.S.C. § 1189(b), Debtor filed

its original Subchapter V Plan of Reorganization on March 22, 2022.  At that time, the sale of

Debtor's assets was still in its preliminary stages involving discussions with interested buyers.

Debtor subsequently filed its Second Amended Subchapter V Plan of Reorganization.  As Debtor

has sold substantially all of its assets, it is a liquidating Plan.  Debtor will investigate and pursue the

causes of action held by the estate if Debtor believes it is prudent to do so and will object to those

claims which it believes are not warranted.  A hearing on confirmation of Debtor's Plan is

scheduled for December 7, 2022.

7.     The Debtor and 424 Wholesale, Inc. (the "Companies") asserted claims against

Andrade relating to, among other things, his employment with the Companies, his activities as a co-

owner and officer of the Companies, and activities as an independent designer or consultant during

the time that the Companies operated the 424 Group business.  On December 21, 2021, the

Companies filed a Complaint against Mr. Andrade in the Marin County Superior, alleging claims of

breach of employment contract; breach of fiduciary duty; violation of unfair competition law;

embezzlement; misappropriation of trade secrets; fraud; intentional misrepresentation; and

temporary restraining order, preliminary and permanent injunctions.

8.     The Debtor, 424 Group Wholesale, Inc., myself and Mr. Andrade reached a

settlement of our disputes and on October 11, 2022, the Court entered its Order Granting the

Debtor's Motion to Approve Compromise of Controversy Pursuant to Fed. R. Bankr. P. 9019

Between the Chapter 11 Debtor and Debtor in Possession and Guillermo Andrade.  However, the

settlement shall become effective only upon approval of the Settlement Agreement and the entry of an Order approving the Debtor's sale of the Claims which are the subject of this Motion.

9. Attached hereto as **Exhibit 1** is the signed Claim Purchase Agreement ("CPA") between the Debtor and Lightwork Worldwide LLC. The assets being sold under the CPA are generally described as the claims, causes of action and defenses against 380 Group, LLC and other claims held by the Debtor (collectively, the "Claims") and are particularly identified in the CPA. The Claims do not include any claims listed in the Debtor's Schedules of Assets and Liabilities, as amended or may be amended that (a) any affiliate of the Debtor may have in or against the Debtor or the Debtor's bankruptcy estate; (b) myself, the Katrina Sirdofsky 1998 Family Trust/U/D/T/ May 7, 1998, or 424 Group Wholesale, Inc., may have in or against the Debtor, the Debtor's bankruptcy estate or each other; and (c) that I may have against Mr. Andrade ("Andrade") and vice versa, including but not limited to claims arising under or related to the Marital Settlement Agreement between myself and Mr. Andrade, all of which are specifically excluded from the sale. The CPA also does not impede, limit or interfere with the Debtor's ability to use the Estate's affirmative claims to object to claims against the Estate.

10. As set forth in the CPA, the proposed buyer of the Claims is Lightwork Worldwide LLC ("Buyer"), the buyer of the Debtor's assets under the Sale Order referenced above ("Primary Asset Sale").

11. The Debtor and its counsel have been marketing the Claims for sale both before and since the Primary Asset Sale and have spoken with two potential buyers. Only Buyer has submitted a written offer acceptable to the Debtor.

12. The purchase price (the "Purchase Price") for the Claims is as follows:

Four hundred, twenty-five thousand dollars ($425,000) in cash, payable as follows:

i.  Deposit: $100,000.00 paid upon execution of this Agreement, which will be applied to the Purchase Price at closing (the "Deposit"). The Deposit is non-refundable except in the event that the Agreement and Sale are terminated as a result of Seller's breach, in each which event, the Deposit shall be returned to Buyer. Seller acknowledges receipt of the Deposit from Buyer. The Deposit shall not be subject to any lien, attachment, trustee process, or any other judicial process of any creditor of Seller or Buyer.

ii.    <u>Balance of Purchase Price</u>. The balance of the Purchase Price, minus the amount of the Deposit, shall be sent by cashier's check or a wire transfer to the attorney-client trust account of Weintraub & Selth, APC, one business day prior to the Closing Date.

13.    The Debtor's only secured creditor at the time the bankruptcy case was filed was a lien under Italian law in favor of Twentyfourseven s.r.l., in the approximate amount of €57,090.37, which was paid in full pursuant to the Primary Asset Sale.

14.    The sale is to be a private sale free and clear of all liens, claims, encumbrances and other interests pursuant to Sections 105, 363, and 365 of the Bankruptcy Code.  The Buyer's offer is for a private sale with no overbids.

15.    The purchase price of $425,000 represents the highest and best written offer received by the Debtor and, pursuant to the Debtor's Second Amended Plan of Reorganization for Small Business Under Chapter 11 puts the estate in a position to pay all estimated administrative and priority claims and pay 100% of all non-insider allowed unsecured claims.  Additionally, the Sale avoids the costs, risks and delays associated with litigating the Claims being sold to Buyer.

16.    The Debtor does not wish to incur unnecessary administrative expense claims of professionals.  The prompt closing of the Sale will allow the Estate to stop incurring significant additional administrative expenses which would necessarily and immediately result from the Debtor continuing its pending litigation and the immediate closing of the Sale will result in the liquidation of the estate's sole remaining assets and allow the prompt and complete administration of the Case.

17.    Neither I, the Debtor, nor I have any other relationship with the Buyer.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 24th day of October, 2022, at London, England.

KATRINA STRDOFSKY

## DECLARATION OF DANIEL J. WEINTRAUB

I, Daniel J. Weintraub, declare and state as follows:

1.      I am the President of Weintraub & Selth, APC ("WS"), general bankruptcy counsel to 424 Group, Inc., the debtor and debtor in possession ("Debtor") in the above captioned Chapter 11 case.  I am the attorney at WS with primary responsibility for this case.  I submit this declaration in support of the Debtor's Motion for Order Approving the Sale of the Debtor's Claims Free and Clear of Liens, Claims, Interests and Encumbrances Pursuant to 11 U.S.C. §363(b)(1) and (f)(2) (the "Motion").  The Motion seeks authority to sell the Debtor's claims, causes of action and defenses against 380 Group, LLC and other claims held by the Debtor (collectively, the "Claims") more particularly identified in the Claim Purchase Agreement ("CPA") attached as **Exhibit 1** to the Declaration of Katrina Sirdofsky, in a private sale to Lightwork Worldwide LLC (the "Buyer").

2.      The assets sought to be sold by Debtor to Buyer pursuant to the CPA are all claims and causes of action held by the estate and include but are not limited to the "Causes of action against third parties" listed in Debtor's Schedule B (item 74) filed with the Court on December 23, 2021 [Dkt. No. 1].

3.      I contacted all parties who I thought might be interested in purchasing the Claims, inquiring as to their interest in purchasing the Claims.  One party expressed interest in bidding and I provided that person with access to a Drop Box containing several documents related to Debtor's claims against 380 Group, LLC.   I also offered to provide any and all other information the potential buyer might request.  That party ultimately declined to submit an offer.

4.      I was responsible for negotiating the terms of sale to Buyer.  The negotiations included several calls and email with Buyer's counsel, the redlining and negotiation of several drafts of the CPA and one meeting with Buyer's principal and its counsel.

5.      Neither I, nor any other employee of WS, (a) have any prior relationship of connection with Buyer or its counsel, other than dealings with such parties earlier in this case during which other assets of the estate were sold to Buyer or (b) have any agreement with Buyer or its counsel.  At all times I sought to maximize the sale price for the Claim and attempted to

obtain the highest and best price possible for the Claims.

6.      The offer from Buyer is the highest and best price I was able to obtain for the Claims. No other person or entity or group of persons or entities offered to purchase the Claims for an amount that would give equal or greater economic value to Debtor.

7.      Finally, Buyer's offer was conditioned upon the Sale being a private sale, and as I was not aware of any other possible interested purchase of the Claims, the Debtor agreed to this condition.

8.      The CPA was the result of arm's-length negotiations by and between Debtor and Buyer without collusion or fraud, and in good faith.   In addition, at all times, the Debtor was represented by counsel and was free to deal with any other party interested in acquiring the Claims.  To my knowledge, the only payments made or to be made by Buyer and other agreements or arrangements entered into by parties in connection with the Sale are set forth in the CPA.

9.      To my knowledge, the Debtor has not entered into the CPA, or proposed to consummate the Sale, for the purpose of hindering, delaying or defrauding Debtor's present or future creditors.

10.      To my knowledge, Buyer is not acquiring or assuming any liability, warranty or other obligation of Debtor, including without limitation the Excluded Liabilities and Encumbrances, other than cure payment, if any, owed to 380 Group, LLC or its affiliates.

11.      The Debtor has sound business purposes and justifications for entering into the CPA given that: (a) consummation of the Sale, along with the proposed potential subordination of the unsecured claims of insiders Katrina Sirdofsky and 424 Group Wholesale, Inc. on the conditions set forth in Exhibit 6 to the Debtor's Second Amended Plan of Reorganization [Doc. No. 176] are projected to yield a one hundred percent (100%) distribution to allowed non-insider general unsecured claims; and (b) the Sale avoids the costs, risks and delays associated with litigating the Claims being sold to Buyer.

12.      The estate is the Plaintiff is a lawsuit in the Marin County Superior Court against Guillermo Andrade and has also commenced discovery under Bankruptcy Rule 2004 against 380

Group, LLC and Guillermo Andrade.  The Debtor, 424 Group Wholesale, Inc. and Katrina

Sirdofsky and Andrade reached a settlement of their disputes and on October 11, 2022, the Court

entered its Order Granting the Debtor's Motion to Approve Compromise of Controversy Pursuant

to Fed. R. Bankr. P. 9019 Between the Chapter 11 Debtor and Debtor in Possession and Guillermo

Andrade [Doc. No. 183].

13.    As set forth in the Settlement Agreement between the Debtor and Mr. Andrade, the

settlement shall become effective only upon the entry of final, non-appealable orders of the

Bankruptcy Court approving the Settlement Agreement and approving the Debtor's sale of the 380

Claims.  While the Settlement Agreement has been approved by the Court, the sale of the 380

Claims must also be approved for the settlement with Mr. Andrade to become effective.

14.    Additionally, the consummation of this Sale will satisfy one condition precedent to

the subordination of the insider claims of Ms. Sirdofsky and 424 Group Wholesale, Inc.,

(Condition No. 1 - that the Debtor consummate the sale of the 380 claims for at least $425,000

prior to the Plan confirmation hearing), and very likely a second condition (Condition No. 4 – that

a minimum of $1,400,000 be available for distribution under the Plan after payment of all allowed

secured, priority and administrative claims).  The other two conditions to subordination are that the

Plan be confirmed by December 15, 2022, and that the Debtor strictly comply with Section 4.01 of

the Plan which pertains to the making of the initial and final distributions to general unsecured

creditors under the Plan.   Prompt approval of the Sale is therefore crucial as it greatly assists the

Debtor in meeting the conditions of the Plan that trigger subordination of the insider claims, which

in turn will result in the payment of a dividend of one hundred percent (100%) to allowed non-

insider general unsecured creditors.

I declare under penalty of perjury under the laws of the United States that the foregoing is

true and correct.  Executed this 24th day of October, 2022, at Los Angeles, California.

/s/ *Daniel J. Weintraub*

_____

DANIEL J. WEINTRAUB

.

# EXHIBIT "1"

EXECUTION COPY

## CLAIM PURCHASE AGREEMENT

This CLAIM PURCHASE AGREEMENT (the "Agreement") is made and entered into as of October 10, 2022, by and between 424 Group, Inc. as the debtor and debtor in possession ("Debtor" or "Seller") in the Chapter 11 bankruptcy case pending in the United States Bankruptcy Court for the Central District of California Los Angeles Division (the "Bankruptcy Court"), as case number 2:21-bk-19407-SK (the "Bankruptcy Case"), 424 Group Wholesale Inc., and any other affiliates of the Seller, and Lightwork Worldwide LLC, a California limited liability company or its assignee ("Buyer") for the sale and purchase of the Assets (as defined below) to Buyer on the terms and conditions set forth herein. The Seller and Buyer are together referred to hereinafter as the "Parties," and individually, as a "Party".

WHEREAS, the Seller is party to a letter of intent ("380 License") dated as of July 1, 2020, in which the Seller entered in an agreement to license its intellectual property to 380 Group, LLC ("380 Group"), pursuant to terms set forth therein;

WHEREAS, the Debtor claims that 380 Group owes the Debtor unpaid royalties and other damages as a result of 380 Group's failure to account to the Debtor, pay royalties when due under the 380 License and other conduct causing damage to the Debtor.

WHEREAS, 380 Group claims the Debtor owes certain funds to 380 Group with respect to the Debtor's purchase of merchandise;

WHEREAS, on December 23, 2021 the Seller filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court thereby commencing the Bankruptcy Case;

WHEREAS, Gregory Jones was appointed as Trustee under Subchapter V of the Bankruptcy Code;

WHEREAS, by Asset Purchase Agreement dated June 23, 2022 Buyer purchased substantially all of the assets of Seller;

WHEREAS, the Bankruptcy Court entered the *Order (1) Approving the Sale of Substantially All Assets of the Estate Free and Clear of Liens, Claims, Interests and Encumbrances Pursuant to 11 U.S.C. §363(b)(1) and (f)(2); and (2) Authorizing Assumption and Assignment of Debtor's Executory Contracts and Interest, If Any, in Commercial Lease* [Docket No. 112] on June 30, 2022.

WHEREAS, the obligations of the Parties under this Agreement are conditioned upon, among other things, the approval of the Bankruptcy Court in accordance with the terms hereof.

**NOW THEREFORE**, in consideration of the mutual representations, covenants, warranties and agreements set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereby agree as follows:

**Error! Unknown document property name.**

EXECUTION COPY

# ARTICLE I
## DEFINITIONS

1.    <u>Definitions</u>. As used in this Agreement, the following terms have the meanings indicated:

"<u>Affiliate</u>" with respect to any specified Person, means any Person which is controlling, controlled by, or under common control, directly or indirectly, with such specified Person, and, if the Person referred to is a natural Person, any member of such Person's immediate family. The term "control" (including, with correlative meaning, the terms "controlled by" and "under common control with") as used with respect to any Person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise.

"<u>Business Day</u>" means any day which is not a Saturday, Sunday or a day on which banks are not required or authorized by law to be closed in New York, New York.

"<u>Claim</u>" has the meaning ascribed to such term in the Bankruptcy Code.

"<u>Encumbrances</u>" means any claims, charges, mortgages, deeds of trust, liens, pledges, security interests, easements, options, rights of first refusal or first offer, proxies, voting trusts, voting agreements, judgments, preemptive purchase rights, transfer restrictions, hypothecations, assignments or other encumbrances or interests.

"<u>Law</u>" means any federal, state, county, city, municipal or local, domestic or foreign, international, multinational or other constitution, statute, law, ordinance, treaty, decree, Order, injunction, code, requirement, rule or regulation of any Governmental Entity.

"<u>Legal Proceeding</u>" means any claim, action, cause of action, complaint, charge, grievance, demand, suit, litigation, arbitration, mediation, proceeding (adversarial or investigative), notice of violation, citation, subpoena, summons, inquiry, hearing, indictment, audit, examination, investigation or similar matter (whether civil, criminal, administrative, judicial, regulatory, investigative or otherwise, whether formal or informal, whether public or private and whether at Law or in equity) before any governmental entity, mediator or arbitrator, whether brought, initiated, asserted or maintained by a governmental entity or any other Person.

"<u>Organizational Documents</u>" means, with respect to any Person, the certificate or articles of incorporation or formation, bylaws, limited liability company agreement, operating agreement and any other formation or governing documentation or agreement of such Person, as applicable.

"<u>Person</u>" means any individual or entity, including any corporation, partnership, joint venture, association, joint stock company, limited liability company, trust, organization or Governmental Entity or political subdivision thereof and any other entity.

Error! Unknown document property name.

EXECUTION COPY

## ARTICLE II
## SALE AND PURCHASE OF THE ASSETS

 2. <u>ASSETS</u>.  Buyer shall purchase the Assets on **Exhibit 1**.

 3. <u>EXCLUDED LIABILITIES</u>.  Notwithstanding anything herein to the contrary, the Parties expressly acknowledge and agree that the Assets shall be sold to Buyer, free and clear of all Encumbrances, and Buyer shall not assume, be obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible for any liabilities, indebtedness, and obligations of the Seller, whether existing on the Closing Date or arising thereafter.

## ARTICLE III
## PURCHASE PRICE

 4. <u>PURCHASE PRICE</u>.  The purchase price (the "<u>Purchase Price</u>"), for the Assets shall be as set forth below:

  a. Four hundred, twenty-five thousand dollars ($425,000) in cash, payable as follows:

   i. <u>Deposit</u>:  $100,000.00 paid upon execution of this Agreement, which will be applied to the Purchase Price at closing (the "<u>Deposit</u>").  The Deposit is non-refundable except in the event that the Agreement and Sale are terminated as a result of Seller's breach, in each which event, the Deposit shall be returned to Buyer.  Seller acknowledges receipt of the Deposit from Buyer.  The Deposit shall not be subject to any lien, attachment, trustee process, or any other judicial process of any creditor of Seller or Buyer.

   ii. <u>Balance of Purchase Price</u>.  The balance of the Purchase Price, minus the amount of the Deposit, shall be sent by cashier's check or a wire transfer to the attorney-client trust account of Weintraub & Selth, APC, one business day prior to the Closing Date.

 5. <u>SHARING</u>.  If Buyer commences a lawsuit or enters into a settlement with 380 Group, 380 Group S.r.l., or any of its affiliates related to any of the claims that Buyer purchases from Seller related to 380 Group or its affiliates, (which decision to commence such a lawsuit shall be within the sole and absolute discretion of Buyer), Seller shall be entitled to share in fifty percent (50%) any damages awarded or settlement reached solely to the extent that such damages awarded or settlement reached is in excess of the sum of $425,000 *plus* Buyer's actual costs incurred in connection and directly related to such lawsuit, settlement or the entry into this Agreement.

Error! Unknown document property name.

EXECUTION COPY

## ARTICLE IV
## CLOSING OF SALE

6.  **CLOSING**.  Subject to the terms and conditions hereof, the closing of the sale of Assets contemplated by this Agreement (the "Closing") shall take place on or before the fifth (5th) business day following the entry of an order of the Bankruptcy Court approving the Debtor's *Motion for an Order Approving the Claim Purchase Agreement* confirming the sale of the Assets to Buyer.

## ARTICLE V
## CONDITIONS TO CLOSING OF SALE

7.  **BUYER CLOSING CONDITIONS**.    The obligations of the Buyer hereunder are subject to the satisfaction, on or prior to the date of the Closing, of the following conditions:

a.  *Accuracy of Representations; Performance of Obligations*.  Seller will have performed Seller's obligations hereunder required to have been performed before the date of the Closing in all material respects, and the representations and warranties of the Seller contained in Article VI of this Agreement will be true and correct in all respects on and as of the date of the Closing with the same effect as though such representations and warranties had been made on and as of such date.

b.  *Condition of the Assets*.  Except as otherwise set forth herein, Buyer will accept the Assets "as is, where is."

c.  *Encumbrances*.  The Assets shall be free of all Encumbrances.

d.  *Transfer of Title*.  Title to and possession of the Assets shall immediately pass to Buyer upon the Closing.

e.  *Bankruptcy Court Approval*.  This Agreement is a binding agreement and is subject only to the entry of an order, substantially in the form attached hereto as **Exhibit 2**, transferring to Buyer the Assets free and clear of Encumbrances (the "Sale Order").  The Sale Order shall expressly provide, among other things, that Buyer is a good faith purchaser of the Assets within the meaning of 11 U.S.C. § 363(m) and that Buyer shall not be deemed a successor to the Seller as a result of its purchase of the Assets.

f.  *Additional Documents*.  The Buyer will have received all such further consents, instruments and documents as the Buyer may reasonably request for the more effective conveyance, sale, assignment or transfer to the Buyer of title to any of the Assets, including without limitation, such bills of sale, deeds, endorsements, assignments (including requisite assignments of all Assets), powers of attorney, UCC terminations and other filings and other good and sufficient instruments, each in form reasonably satisfactory to Buyer, which are necessary to vest in Buyer all the right, title and interest

Error! Unknown document property name.

of Seller in, to or under any or all of the Assets free and clear of Encumbrances.

g. *Tax Considerations*. A duly completed Form W-9 executed by Seller (or if Seller is a disregarded entity for U.S. federal income tax purposes, a Form W-9 executed by the person treated as its regarded owner for U.S. federal income tax purposes)

8.    SELLER CLOSING CONDITIONS.    The obligations of the Seller hereunder are, at Seller's option, subject to the satisfaction, on or prior to the date of the Closing, of the following conditions:

a. *Accuracy of Representations; Performance of Obligations*. Buyer will have performed Buyer's obligations hereunder required to have been performed before the date of the Closing in all material respects, and the representations and warranties of the Buyer contained in Article VI of this Agreement will be true in all material respects (except for such representations and warranties that are qualified by their terms by a reference to materiality, which representations and warranties as so qualified will be true in all respects, and representations and warranties that relate to a certain date, which shall be true and correct as of such date) on and as of the date of the Closing with the same effect as though such representations and warranties had been made on and as of such date.

b. *Purchase Price*. The Buyer will have paid the Purchase Price pursuant to Article III, by wire transfer in immediately available funds.

c. *Bankruptcy Court Approval*. The Bankruptcy Court shall have entered the Sale Order.

d. *Additional Documents*. The Seller will have received all such further instruments and documents as the Seller may reasonably request for the more effective conveyance, sale, assignment or transfer by the Seller to the Buyer of any of the Assets.

**ARTICLE VI**
**REPRESENTATIONS AND WARRANTIES**

9.    Each of the Parties to this Agreement represents, warrants, and agrees as to itself (as applicable) as follows:

a. *Power*. Subject to entry of the Sale Order, each Party hereto represents that he, she or it has full authority and capacity to execute this Agreement and perform its respective obligations under this Agreement in accordance with the terms of this Agreement.

b. *Authority Relative to Agreement*. Subject to entry of a Sale Order, the execution, delivery, and performance of this Agreement by the Parties and

Error! Unknown document property name.

**EXECUTION COPY**

the consummation by the Parties of the transactions provided for herein, have been duly and effectively authorized by all necessary action. The Parties will execute all such further and additional documents as shall be reasonable, convenient, necessary or desirable to carry out the provisions of this Agreement. This Agreement and any other documents executed by the Parties, upon execution by the Parties, will constitute the legal, valid and binding obligation of the Parties.

c.   *Reliance.*  Neither Party (nor any officer, agent, employee, representative, or attorney of or for any party) has made any statement or representation to any other Party regarding any fact relied upon in entering into this Agreement, and each Party does not rely upon any statement, representation or promise of any other Party (or of any officer, agent, employee, representative, or attorney for the other Party), in executing this Agreement, except as expressly stated in this Agreement. Each Party to this Agreement has made such investigation of the facts pertaining to this Agreement and of all the matters pertaining thereto as it deems necessary.

d.   *Title and Condition of Purchased Assets*.  The Seller has possession or control of the Assets to be conveyed as of the Closing and has good and marketable title to all of the Assets and will deliver title to such Assets to Buyer free of all Encumbrances.

e.   *Compliance with Laws*.  Parties are in compliance with all applicable Laws.

f.   *Taxes.*  Seller is not a "foreign person" as that term is used in Treasury Regulations Section 1.1445-2.

g.   *Legal Proceedings*.  As of the date hereof, except for the Bankruptcy Case and Rule 2004 proceedings seeking discovery from 380 Group and Guillermo Andrade and litigation pending against Guillermo Andrade in the Superior Court of California, County of Marin styled *424 Group, Inc. d/b/a FourTwoFour on Fairfax; 424 Group Wholesale, Inc. v. Guillermo Andrade aka Mynor Guillermo Andrade Ortega, an individual; and Does 1 through 10, inclusive*, Case No. CIV 2104249, Seller represents that there is no proceeding or order that (a) seeks to restrain or prohibit or otherwise challenge the consummation, legality or validity of the transactions contemplated hereby or (b) is in any way related to the Assets.

h.   *No Conflicts*.  Neither the execution, delivery and performance of this Agreement, nor the consummation of the transactions provided for herein, will (a) conflict with or result in a breach of any provision of the Buyer's organizational documents, (b) conflict with, result in a breach of, constitute a default or event of default under any of the terms, conditions or provisions of any agreement or instrument to which the Buyer is a party, or (c) result in a violation of any Laws (as defined here) applicable to the Buyer. No consent, approval or authorization of, or registration or filing with, any third

Error! Unknown document property name.

DocuSign Envelope ID: 1C57132E-0269-4D92-ACB6-18F581E6D553

party is required in connection with the execution and delivery by Buyer of this Agreement and the consummation of the transactions contemplated hereby.

i.  *Operations Prior to Closing Date*.  Seller covenants and agrees that, except (i) as expressly contemplated by this Agreement, (ii) with the prior written consent of Buyer, (iii) as required by the Bankruptcy Court other Court of competent jurisdiction, or (iv) as otherwise required by, prior to the Closing Date (or the earlier termination of this Agreement): (A) Seller and its Affiliates shall stay any pending Legal Proceedings related to the Assets; and (B) Seller and its Affiliates shall not commence any Legal Proceedings related to the Assets.

j.  *Approvals and Financing.*  Buyer has received all corporate and financing party approvals necessary to consummate the transactions contemplated by this Agreement.  As of the date hereof, Buyer has sufficient funds available to pay the Purchase Price and is not aware of any facts, circumstances or conditions that would reasonably be expected to prevent the Buyer from having sufficient funds to enable the Buyer to consummate the transactions contemplated by this Agreement on the Closing Date.

## ARTICLE VII
## TERMINATION OF AGREEMENT

10.  <u>TERMINATION</u>. Notwithstanding anything to the contrary in this Agreement, this Agreement may be terminated at any time prior to the Closing:

a.  by mutual written consent of the Seller and Buyer;

b.  by the Seller, if Buyer shall have breached or failed to perform in any material respect any of its respective representations, warranties, covenants or other agreements contained in this Agreement, and such breach or failure to perform (i) would give rise to the failure of a condition set forth in Article V, and (ii) cannot be or has not been cured prior to the date that is five (5) days from the date that Buyer is notified by the Seller of such breach or failure to perform; provided, however, that the Seller shall not have a right to terminate this Agreement under this section if the Seller is then in material breach of this Agreement;

c.  by the Buyer, if the Seller shall have breached or failed to perform in any material respect any of its respective representations, warranties, covenants or other agreements contained in this Agreement, and such breach or failure to perform (i) would give rise to the failure of a condition set forth in Article V, and (ii) cannot be or has not been cured prior to the date that is five (5) days from the date that the Seller is notified by Buyer of such breach or failure to perform; provided, however, that Buyer shall not have a right to

7

EXECUTION COPY

terminate this Agreement under this section if Buyer is then in material breach of this Agreement; and

    d. by Buyer or Seller, upon written notice to the Seller, if the Sale Order has not been entered by November 15, 2022, unless mutually extended by the Parties.

11.    <u>EFFECT OF TERMINATION</u>.  In the event of termination by the Seller or Buyer pursuant to Article VII(10), written notice thereof shall forthwith be given to the other Party and the Agreement shall be terminated, without further action by any party.  In the event of any valid termination under Article VII(10) other than a termination pursuant to Article VII(10)(b), Seller shall return the Deposit to Buyer by wire transfer in immediately available funds.  In the event of any valid termination under Article VII(10)(b), Seller shall be entitled to retain the Deposit as its sole remedy.

## ARTICLE IX
## ADDITIONAL AGREEMENTS IN CONNECTION WITH SALE

12.    <u>PAYMENTS RECEIVED</u>.  Seller, on the one hand, and Buyer, on the other hand, each agree that, after the Closing, each will hold and will promptly transfer and deliver to the other, from time to time as and when received by them, any cash, checks with appropriate endorsements (using each of their best efforts not to convert such checks into cash) or other property that they may receive on or after the Closing which properly belongs to the other and will account to the other for all such receipts.

13.    This Agreement shall be deemed to have been executed and delivered within the State of California, and the rights and obligations of the Parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of California. For purposes of this Agreement, "Laws" means federal, state, and local statutes, ordinances, regulations, codes, directives, other laws, permits, authorizations, governmental restrictions and requirements, and decrees or orders of any court or other governmental agency relating to the Assets or Premises, including (without limitation) tax, occupational health and safety, and environmental laws.

14.    This Agreement and the right of the Parties hereunder shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns.  Each term of this Agreement is contractual and not merely a recital. The provisions of this Agreement are intended for the sole benefit of the Parties as specifically provided herein, and shall not inure to the benefit of any other entity or person (other than successors and permitted assigns of the Parties hereto) either as a third party beneficiary or otherwise.  No Party may assign either this Agreement or any of his or its rights, interests, or obligations hereunder without the prior written approval of the other Party, and any attempt to do so shall be void. This Agreement is the entire Agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreements and discussions.  This Agreement may be amended only by an agreement in writing.

**Error! Unknown document property name.**

DocuSign Envelope ID: 1C57132E-0269-4D92-ACB6-18F581E6D53

15.     Each Party has read this Agreement and understands the contents hereof. Each Party has cooperated in the drafting and preparation of this Agreement.  Hence, in any construction to be made of this Agreement, the same shall not be construed against any Party.

16.     In the event of litigation relating to this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees.

17.     This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart (including facsimile signatures) shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to both Parties.

18.     The Parties hereto agree that the Bankruptcy Court shall have sole and exclusive jurisdiction, sitting without a jury, to hear and determine and disputes that arise under or on account of this Agreement.

19.     If any of the provisions of this Agreement are held by the court of competent jurisdiction to be invalid, void or otherwise unenforceable, the remaining provisions shall nonetheless continue in full force and effect without being impaired or invalidated in any way.

20.     In no event shall any party be obligated or liable for any indirect, consequential, special, or punitive damages.

21.     The parties hereby waive trial by jury in any action, proceeding or counterclaim brought by any party against another party on any matter arising out of or in any way connected with this Agreement.

22.     Nothing in this Agreement expressed or implied is intended to confer upon any person other than the parties hereto or their respective successors, any right, remedies, obligations or liabilities under or by reason of this Agreement, and neither Seller nor any affiliate of Seller shall have any right of offset or setoff whatsoever.

23.     The Parties shall execute and deliver all documents and will each use commercially reasonable efforts to effectuate the transactions contemplated hereby and to fulfill and cause to be fulfilled the conditions to the Closing.  After the Closing, the Parties further agree to execute and deliver all documents and will use commercially reasonable efforts to perform all further acts that may be necessary to effectuate the provisions of this Agreement.

## ARTICLE X
## NOTICE

24.     *Notices*.  Any notices or communications required or permitted hereunder shall be sufficiently given if delivered in person, sent by reputable overnight carrier,

9

registered or certified mail, return receipt requested, postage prepaid, or e-mail addressed as follows:

> Seller:  424 Group, Inc.,
> c/o Steve Coats, CPA
> 775 E. Blithedale Avenue PMB542
> Mill Valley, CA 94941
> E-mail: *stephencoats@aol.com*
> E-mail: katrina@424groupinc.com
>
> With a copy to:  Weintraub & Selth, APC
> 11766 Wilshire Boulevard, Suite 450
> Los Angeles, CA  90025
> Tel.:  (310) 207-1494
> Fax:  (310) 442-0660
> Attn: Daniel J. Weintraub, Esq.
> E-mail:  dan@wsrlaw.net
>
> Buyer: Lightwork Worldwide LLC
> 2030 E Vista Bella Way
> Compton, CA 90220
> Attn:  Edward Zhou and Chiouyi Chang
> E-mail:  edward@lightworkworldwide.com
>   chiouyi@instaco.com
>
> With a copy to: Katten Muchin Rosenman LLP
> 50 Rockefeller Plaza
> New York, NY 10020
> Tel.:  (212) 940-8700
> Fax:  (212) 940-8776
> Attn.:   Steven J. Reisman, Esq.
>   Cindi Giglio, Esq.
> E-Mail:  sreisman@katten.com
>   cgiglio@katten.com
>
> Subchapter V Trustee: Gregory K. Jones
> Stradling Yocca Carlson Rauth
> 10100 N. Santa Monica Boulevard, Suite 1400
> Los Angeles, CA 90067
> Tel.: (424) 214-7044
> Fax:  (424) 214-7010
> E-Mail: gjones@stradlinglaw.com

or such address as shall be furnished by such notice to the other Parties.  All notices shall be deemed delivered when delivered in person or facsimile or on the day following deposit of such notice with a reputable overnight carrier or the U.S. mail with adequate postage thereon.

**Error! Unknown document property name.**

**EXECUTION COPY**

**IN WITNESS WHEREOF**, each of the Parties hereto has caused this Agreement to be executed by its duly authorized representative as of the day and year first written above.

**424 Group, Inc.**,
a California corporation


By: Katrina Sirdofsky,
President and Chief Executive Officer



**Lightwork Worldwide LLC**
a California limited liability company

By: Edward Zhou
Chief Executive Officer

11

DocuSign Envelope ID: 1C57132F-0269-4D92-ACB6-18F581F6D153

## EXHIBIT 1

### Assets Purchased

The "Assets" for purchase herein constitute shall include: any claim, cause of action, or right to recovery by the Debtors or its Affiliates solely to the extent related or pertaining to the Debtor or its business, including without limitation, from any Legal Proceeding, including but not limited to the right to monetary benefits, or benefits that may be monetized, from settlements, judgments, or any other form of resolution of any Legal Proceeding or the operative facts alleged in any Legal Proceeding.  Further, the Assets includes all defenses, rights of set-off, counter-claims, causes of action, and litigation rights existing as of the Effective Time in favor of Seller against third parties arising out of and relating to the Assets, whether choate or inchoate, known or unknown, contingent or non-contingent.  Notwithstanding the foregoing, the Assets shall not include any interests (including equity interests), claims, demands, rights, causes or causes of action, defenses, liens, and cross claims, including, without limitation, any claims scheduled on the Debtor's Schedules of Assets and Liabilities, as amended or may be amended (collectively, the "Preserved Rights") that (a) any Affiliate may have in or against the Debtor or the Debtor's bankruptcy estate; (b) Katrina Sirdofsky ("Sirdofsky"), the Katrina Sirdofsky 1998 Family Trust/U/D/T/ May 7, 1998, or 424 Group Wholesale, Inc., may have in or against the Debtor, the Debtor's bankruptcy estate or each other; and (c) that Sirdofsky may have against Guillermo Andrade and vice versa, including but not limited to claims arising under or related to the Marital Settlement Agreement between Sirdofsky and Andrade.  Additionally, nothing herein shall preclude the Debtor, Sirdofsky, 424 Group Wholesale, Inc. or an Affiliate from defensively objecting to any proofs of claim filed in the Chapter 11 case, including asserting in such claim objection that a creditor may have committed fraud upon or violated the law with respect to the Debtor and that such conduct should be an offset to, reduce or eliminate the bankruptcy estate's liability to such creditor in respect of its claims.  In no event shall the Debtor seek an award of damages or affirmative relief against such creditor.

# **EXHIBIT 2**

**Sale Order**

DocuSign Envelope ID: 1C57132F-0269-4D92-ACB6-18F581E6D553

1  Daniel J. Weintraub – Bar #132111
   James R. Selth – Bar #123420
2  **WEINTRAUB & SELTH, APC**
   11766 Wilshire Boulevard, Suite 450
3  Los Angeles, CA 90025
   Telephone: (310) 207-1494
4  Facsimile: (310) 442-0660
   Email: dan@wsrlaw.net
5

6  General Bankruptcy Counsel to
   Chapter 11 Debtor and Debtor in Possession,
7  424 GROUP, INC.

8

9              **UNITED STATES BANKRUPTCY COURT**

10

11        **CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

12

13  In re:                              Case No. 2:21-bk-19407-SK

14  424 GROUP, INC.,                    Chapter 11 – Subchapter V

15                                      **ORDER APPROVING SALE OF THE**
                                        **DEBTOR'S CLAIMS**
16        Debtor and Debtor in Possession.

17                                      Hearing:
                                        Date:    [____], 2022
18                                      Time:    [_____]
                                        Place:   Courtroom 1575
19                                               255 E. Temple St.
                                                 Los Angeles, CA 90012
20

21

22

23

24

25

26        Upon consideration of the Motion for Order Approving the Sale of the Debtor's Claims

27  [Docket No. ___] (the "Motion") of the above-captioned debtor and debtor in possession (the

28  "Debtor" or "Seller"), for entry of an order, pursuant to sections 105(a), 363, and 365 of title 11 of

the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the sale of the Assets (the "Sale"), on an "as is, where is" basis, free and clear of all liens, claims, encumbrances, and interests, to Lightwork Worldwide LLC (the "Buyer") as set forth in the asset purchase agreement, dated as of October [_], 2022 (as may be amended from time to time), annexed hereto as Exhibit 1 (the "Purchase Agreement") between Debtor, 424 Group Wholesale Inc., and any other affiliates of the Seller, and Buyer; and this Court having determined that the relief set forth in this Order is in the best interests of Debtor, its estate, creditors, and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and the Court having conducted a hearing on the Motion commencing on [____], 2022 (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having (i) reviewed and considered the Motion, all relief related thereto, any objections thereto, and statements of counsel and the evidence presented in support of the relief requested by Debtor in the Motion and at the Sale Hearing; and upon the entire record in this Bankruptcy Case; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon, and good and sufficient cause appearing therefor, it is hereby **FOUND AND DETERMINED THAT:**

A.    Findings of Fact and Conclusions.  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.    Jurisdiction and Venue. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157.  This is a core matter pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Statutory and Legal Predicates.  The statutory predicates for the relief are Bankruptcy Code sections 105 and 363 and Bankruptcy Rules 2002, 6004, and 9014.

D.    Notice. Due and adequate notice of the proposed Sale, the Sale Hearing, and the subject matter thereof has been provided to all parties in interest herein, and no other or further

notice is necessary.  A reasonable opportunity to object or be heard with respect to the Sale has been afforded to all interested persons and entities.

E.    <u>Interests Property of the Estate</u>. The Assets sought to be transferred by Debtor to Buyer pursuant to the Purchase Agreement are property of Debtor's estate and title thereto is vested in Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.  Debtor is the sole and rightful owner of such Assets sought to be transferred by Debtor with all right, title, and interest to transfer and convey the Assets to Buyer, and no other person has any ownership right, title, or interests therein.

F.    <u>Sufficiency of Marketing</u>.  (i) Debtor and its advisors engaged in an appropriate marketing and sale process for Assets under the circumstances of this case through postpetition sale efforts and the postpetition sale process, as set forth in the Declarations of Katrina Sirdofsky and Daniel Weintraub; (ii) Debtor and its advisors conducted a fair and open sale process; (iii) the sale process and the actions of Debtor and Buyer in connection therewith were non-collusive and duly noticed, and provided a full, fair, and reasonable opportunity for other entities to make an offer to purchase Assets; and (iv) the process conducted by Debtor sought a higher or otherwise better offer to purchase Assets; and (v) the process conducted by Debtor obtained the highest or otherwise best value for Assets for Debtor's estate, and no other transaction would have yielded as favorable an economic result.  No other person or entity or group of persons or entities has offered to purchase Assets for an amount that would give equal or greater economic value to Debtor than the value being provided by Buyer pursuant to the Purchase Agreement.  Among other things, the Sale is the best alternative available to Debtor to maximize the return to its creditors.  The terms and conditions of the Purchase Agreement are fair and reasonable.  Approval of the Motion, the Purchase Agreement, and the transactions contemplated thereby, including the Sale, is in the best interests of Debtor, its estates and creditors, and all other parties in interest.

G.    <u>Arm's-Length and Buyer's Good Faith</u>.  The Purchase Agreement and Transactions contemplated therein were negotiated, proposed and are undertaken by Debtor, its officers, directors, employees, agents, and representatives, including its counsel, on the one hand, and Buyer and its management, officers, directors, employees, agents, representatives, and counsel, on the

3822.02    ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE ESTATE, etc.
**Error! Unknown document property name.**

DocuSign Envelope ID: 1C57132F-0269-4D92-ACB6-18F581E9D553

other hand, from arm's-length bargaining positions without collusion or fraud, and in good faith within the meaning of section 363(m) of the Bankruptcy Code.  Buyer has proceeded in good faith, including by: (a) recognizing that Debtor was free to deal with any other party interested in acquiring the Assets; (b) negotiating and entering into the Purchase Agreement without collusion, without fraud, and from arm's length bargaining positions.  Debtor and Buyer have not engaged in any conduct that would cause or permit the Purchase Agreement or the consummation of the Sale to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.  All payments to be made by Buyer and other agreements or arrangements entered into by Buyer in connection with the Sale have been disclosed, neither Buyer, nor Debtor has violated section 363(n) of the Bankruptcy Code by any action or inaction.  As a result of the foregoing, in the absence of a stay pending appeal, Buyer will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing and consummating the Sale at any time after the entry of this Order, and, accordingly, such closing and consummation in the face of an appeal will not deprive Buyer of its status as a good faith purchaser.  Without limiting the generality of the foregoing, the reversal or modification on appeal of the authorization provided herein to consummate the Sale or any portion thereof, shall not affect the validity of the Sale.  Buyer and Debtor are entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

H.    <u>Highest or Best Offer</u>.  The total consideration provided by Buyer for the Assets as reflected in the Purchase Agreement is the highest and best offer received by Debtor for the Assets. The Debtor determined that the Purchase Agreement constituted the highest and best offer for the Assets.  Debtor's determination that the Purchase Agreement constitutes the highest and best offer constitutes a valid and sound exercise of Debtor's business judgment, and Debtor's decision to enter into the Purchase Agreement and consummate the Transactions constitutes a proper exercise of the fiduciary duties of Debtor and its officers and directors.  The offer of Buyer, upon the terms and conditions set forth in the Purchase Agreement, including the total consideration to be realized by Debtor thereunder, (a) is the highest and best offer received by Debtor, and (b) is in the best interests of Debtor, its creditors, its estate and other parties in interest.  The Purchase Agreement and Transactions will present the best opportunity to realize the value of the Assets.  taking into

consideration all relevant factors and circumstances, no other entity has offered to purchase the Assets for greater economic value to Debtor or its estate than that provided by the Purchase Agreement.

      I.    <u>No Fraudulent Purpose</u>.  The Purchase Agreement was not entered into, and neither Debtor nor Buyer have entered into the Purchase Agreement, or propose to consummate the Sale, for the purpose of hindering, delaying or defrauding Debtor's present or future creditors. Neither Debtor nor Buyer have entered into the Purchase Agreement, or are proposing to consummate the Sale, fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or the laws of the United States, any state, territory, possession thereof, the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

      J.    <u>Sale Free and Clear</u>.  Except as expressly provided for in the Purchase Agreement or this Order, if at all, Buyer is not acquiring or assuming any liability, warranty or other obligation of Debtor, including without limitation the Excluded Liabilities and Encumbrances.  The transfer of the Assets to Buyer will not subject Buyer to any liability whatsoever with respect to the operation of Debtor's businesses prior to the Closing.

      K.    <u>Sale as an Exercise of Business Judgment</u>.  Debtor has demonstrated good, sufficient, and sound business purposes and justifications for approval of and entry into the Sale and the Purchase Agreement, including that the Sale, along with the proposed potential subordination of the unsecured claims of Katrina Sirdofsky and 424 Group Wholesale, Inc., on the conditions set forth in the Debtor Second Amended Plan of Reorganization is projected to  yield a one hundred percent (100%) distribution to allowed general unsecured claims and avoids the costs, risks and delays associated with litigating the claims sold to Buyer.  Debtor's entry into and performance under the Purchase Agreement and the consummation of the Sale, constitutes Debtor's sound business judgment and such acts are in the best interests of Debtor, its estate, and all parties in interest.  The Court finds that Debtor has articulated good and sufficient reasons justifying the Sale, including, but not limited to, that they: (a) are the result of due deliberation by Debtor and constitute a sound and reasonable exercise of Debtor's business judgment consistent with its

DocuSign Envelope ID: 1C57132F-0269-4D92-ACB6-18F581E9D553

fiduciary duties; (b) provide value to and are beneficial to Debtor's estate, and are in the best interests of Debtor and its estates, creditors and other parties in interest; and (c) are reasonable and appropriate under the circumstances.  Business justifications for the Sale include, but are not limited to, the following: (x) the Purchase Price set forth in the Purchase Agreement constitutes the highest or otherwise best offer received for the Assets; (y) the Purchase Agreement presents the best opportunity to maximize the value of the Assets; and (z) the value of Debtor's estate will be maximized through the sale of the Assets pursuant to the Purchase Agreement.

L.    <u>Compelling Reasons for an Immediate Sale</u>.  The prompt sale of the Assets will avoid the Estate incurring significant additional administrative expenses which would necessarily and immediately result from the Debtor continuing pending litigation and will allow the prompt and complete administration of the Case.  Therefore, time is of the essence in consummating the Sale, and Debtor and Buyer intend to close the Sale as soon as reasonably practicable.  Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale contemplated by the Purchase Agreement outside: (a) the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code; and (b) a plan of liquidation, in that, among other things, the immediate consummation of the Sale to Buyer is necessary and appropriate to preserve and to maximize the value of Debtor's estates.  Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rule 6004 with respect to the transactions contemplated by this Order.

M.    <u>Final Order</u>.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rule 6004(h), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, waives any stay, and expressly directs entry of judgment as set forth herein.  Debtor has demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the immediate approval and consummation of the Sale as contemplated by the Purchase Agreement.  Buyer, being a good faith Buyer under section 363(m) of the Bankruptcy Code, may close the Sale contemplated by the Purchase Agreement at any time

DocuSign Envelope ID: 1C57132E-0269-4D92-ACB6-18F581E9D553

after entry of this Order.

**IT IS HEREBY ORDERED THAT:**

1.      <u>Motion Granted</u>.  The Motion is GRANTED as set forth herein.

2.      <u>No Objections</u>.  No objections to the Motion were filed.

3.      <u>Notice</u>.  Notice of the Motion, Sale (and the Transactions and Purchase Agreement contemplated in connection therewith), Sale Hearing, and all deadlines related thereto, was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

4.      <u>Approval</u>.  Debtor is authorized to enter into the Purchase Agreement, the Sale, and the other Transactions (including any amendments, supplements, and modifications thereto, and all of the terms and conditions therein).  Pursuant to sections 105 and 363 of the Bankruptcy Code, Debtor is authorized and directed to consummate the Sale, including, without limitation, the sale and transfer of the Assets to Buyer in accordance with, and subject to, the terms and conditions of the Purchase Agreement, and to transfer and assign all right, title and interest (including common law rights) to all Assets as defined in the Purchase Agreement which rights shall be conveyed free and clear of all Excluded Liabilities and Encumbrances to the extent set forth in, and in accordance with and subject to, the terms and conditions of the Purchase Agreement.  Debtor and Buyer are each hereby authorized and directed to take any and all actions necessary or appropriate to: (a) consummate the Sale of the Assets to Buyer and the Closing of the Sale pursuant to the Purchase Agreement and this Order and (b) perform, consummate, implement, and close fully the Purchase Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement.  Debtor is hereby authorized and directed to perform each of its covenants and undertakings as provided in the Purchase Agreement prior to or after the Closing of the Sale without further order of the Court.  The failure to specifically include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement (including, but not limited to, all ancillary agreements and Related Documents contemplated thereby) be authorized and approved in its entirety.  All persons are prohibited from

-7-

taking any action to adversely affect or interfere with the ability of Debtor to transfer the Assets to Buyer in accordance with the Purchase Agreement and this Order. The Assets sold pursuant to the Purchase Agreement to Buyer are being sold "as-is where is," without any representations or warranties from Debtor as to the quality or fitness of such assets for either its intended or any other purposes.

5.    <u>No Plan Modifications</u>. The Purchase Agreement and Debtor's obligations therein shall not be altered, amended, rejected, discharged or otherwise affected by any chapter 11 plan proposed or confirmed in the Bankruptcy Case without the prior written consent of Buyer. The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered confirming any plan of reorganization for Debtor or converting Debtor's case to a case under chapter 7 of the Bankruptcy Code.

6.    <u>Transfer Free and Clear</u>. One or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied. Pursuant to sections 105 and 363 of the Bankruptcy Code, the Assets are transferred by Debtor to Buyer free and clear of the Excluded Liabilities, Encumbrances, any lien (statutory or otherwise), hypothecation, encumbrance, security interest, mortgage, pledge, restriction, charge, instrument, license, preference, priority, security agreement, easement, covenant, encroachment, option, or other interest in the subject property, including, without limitation, any right of recovery, tax (including foreign, federal, state, and local tax), order of any governmental authority, or other claim with respect thereto, of any kind or nature (including (a) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (b) any assignment or deposit arrangement in the nature of a security device, (c) any claims based on any theory that Buyer is a successor, transferee or continuation of Debtor, or the Assets, or that a de facto merger resulted from the transfer of the Assets, and (d) any leasehold interest, license or other right, in favor of a person other than Buyer, to use any portion of the Assets), whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or noncontingent, material or nonmaterial, known or unknown, (collectively, "<u>Interests</u>", and individually, an "<u>Interest</u>") (with any such Interests attaching to the Purchase Price) provided

however that any cure amount pursuant to section 365 of the Bankruptcy Code owing to 380 Group in connection with an assumption and assignment of the 380 License to Buyer shall be paid by Buyer. Each holder of any Interest against Debtor, its estate, or any of the Assets: (a) has, subject to the terms and conditions of this Order, consented to the Sale or is deemed to have consented to the Sale; (b) could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such Interest; or (c) otherwise falls within the provisions of 11 U.S.C. § 363(f). No holders of Interests filed objections to the Motion and all Interest holders are deemed, subject to the terms of this Order, to have consented to the Sale pursuant to 11 U.S.C. § 363(f)(2). Debtor is authorized and directed to transfer the Assets to Buyer in accordance with the terms of the Purchase Agreement and this Order. Upon the Closing, such transfer shall: (x) be valid, legal, binding and effective; (y) vest Buyer with all right, title and interest of Debtor in the Assets; and (z) be free and clear of all Interests, Encumbrances, Excluded Liabilities and any other claims and interests in accordance with section 363(f) of the Bankruptcy Code. All persons having claims or interests of any kind or nature whatsoever against Debtor or the Assets, including without limitation Interests, Encumbrances, or Excluded Liabilities, shall be forever barred, estopped and permanently enjoined from creating, perfecting, pursuing, enforcing, attaching, collecting, recovering, or asserting such claims or interests against Buyer or any of its assets, property, affiliates, successors, assigns, or the Assets.

7. _Proceeds of the Sale_. The proceeds of the Sale of the Assets shall be transmitted by wire to the attorney client trust account of Debtor's counsel and shall not be distributed, other than upon entry of a Court order authorizing such distribution or in accordance with a confirmed Plan of Reorganization for Small Business Under Chapter 11.

8. _Surrender of Possession_. Except as otherwise provided in the Purchase Agreement, any Assets in the possession or control of any person or entity, including any vendor, supplier, attorney or employee of Debtor, shall be delivered to Buyer free and clear of all Interests, including without limitation free and clear of the Encumbrances and the Excluded Liabilities, and deemed delivered at the time of Closing (or such other time as provided in the Purchase Agreement).

9. _Vesting of Assets in Buyer_. Effective upon the Closing, the transfer to Buyer of the

3822.02    ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE ESTATE, etc.
**Error! Unknown document property name.**

Assets pursuant to the Purchase Agreement shall be, and hereby is deemed to be, a legal, valid and effective transfer of the Assets, and vests with or will vest in Buyer all the Assets free and clear of Interests, including without limitation free and clear of Encumbrances and Excluded Liabilities. This Order (a) shall be effective as a determination that upon the Closing (i) no claims arising from any period prior to the Closing can be asserted against Buyer, (ii) the Assets shall have been transferred to Buyer free and clear of all Encumbrances, and (iii) the conveyances described herein have been effected, (b) is and shall be binding upon and govern the acts of all entities, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, and each of the foregoing persons and entities is hereby directed to accept for filing any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

10.    _Injunction_.  All persons are hereby enjoined from taking any action that would interfere with or adversely affect the ability of Debtor to transfer the Assets in accordance with the terms of the Purchase Agreement and this Order.  Following the Closing, no holder of any Interest shall interfere with Buyer's title to or use and enjoyment of the Assets based on or related to any such Interest or based on any actions or inactions Debtor may take in the Bankruptcy Case.

11.    _Direction to Creditors and Parties in Interest_.  On the Closing, but subject to the Purchase Agreement, Debtor's creditors and the holders of any claims are authorized and directed to execute such documents and take all other actions as may be necessary to terminate, discharge or release their Encumbrances against the Assets, if any, as such Encumbrances may otherwise exist.

12.    _Direction to Government Agencies_.  Each and every filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state and local official, and any other person and entity who may be required by operation of law, the duties of its office or contract, to accept, file, register, or otherwise record or release any documents or

3822.02    ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE ESTATE, etc.
**Error! Unknown document property name.**

instruments or who may be required to report or insure any title in or to the Assets, is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale and approved by this Order.

13.    Good Faith Buyer.  Buyer is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code, and Buyer has proceeded in good faith in all respects in connection with the Sale.

14.    Consummation of Sale.  Pursuant to sections 105 and 363 of the Bankruptcy Code, Debtor, as well as its officers, employees and agents, are authorized to enter into, execute, deliver and perform their obligations under and comply with the terms of the Purchase Agreement and to close and consummate the Sale, including by taking any and all actions as may be reasonably necessary or desirable to implement the Sale pursuant to and in accordance with the terms and conditions of the Purchase Agreement and this Order.

15.    Transfer of Marketable Title.  Upon the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Assets or a bill of sale transferring good and marketable title in the Assets to Buyer at the Closing pursuant to the terms of the Purchase Agreement, free and clear of all Encumbrances and Excluded Liabilities.

16.    No Successor Liability.  By virtue of the Sale, Buyer and its affiliates, successors and assigns shall not be deemed or considered to: (a) be a legal successor, or otherwise be deemed a successor to any of Debtor; (b) have, de facto or otherwise, merged with Debtor; (c) be a consolidation with Debtor or its estate; or (d) be an alter ego or a continuation or substantial continuation, or be holding itself out as a mere continuation, of Debtor, its estate, business  or operations, or any enterprise of Debtor, in each case by any law or equity.  None of Buyer or its affiliates, successors, assigns, equity holders, officers, directors, employees or professionals shall have or incur any liability to, or be subject to any action by Debtor or its estate, predecessors, successors, or assigns, arising out of the negotiation, investigations, preparation, execution, or delivery of the Purchase Agreement and entry into and consummation of the sale of the Assets, except as expressly provided in the Purchase Agreement or this Order.

3822.02    ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE ESTATE, etc.
**Error! Unknown document property name.**

17.    <u>Approval to Release Encumbrances</u>.  If any person or entity that has filed financing statements or other documents or agreements evidencing Encumbrances on the Assets shall not have delivered to Debtor before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens, and any other documents necessary for the purpose of documenting the release of all Encumbrances that the person or entity has or may assert with respect to the Assets, Debtor and Buyer are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets.  Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute evidence of the release of the Interests against the Assets; provided that, notwithstanding anything in the Order or Purchase Agreement to the contrary, the provisions of the Order shall be self-executing, and the Buyer shall not be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, county, or local government agency, department, or office.  For the avoidance of doubt, upon consummation of the Sale as set forth in the Purchase Agreement, Buyer is granted power of attorney and authorized to file termination statements lien terminations, releases, or other amendments in any required jurisdiction to remove and record, notice filings or financing statements recorded to attach, perfect, or otherwise notice any Encumbrances that is extinguished or otherwise released pursuant to this Order under section 363 and the related provisions of the Bankruptcy Code.

18.    <u>Inconsistencies with Prior Orders, Pleadings or Agreements</u>.  To the extent this Order is inconsistent with any prior order or pleading in the Bankruptcy Case, the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

19.    <u>Subsequent Orders and Plan Provisions</u>.  Unless otherwise agreed to by Debtor and

Buyer, Order shall not be modified by any chapter 11 plan confirmed in the Bankruptcy Case or any subsequent order(s) of this Court.

20.    _Binding Effect of Order_.  This Order and the Purchase Agreement shall be binding in all respects upon Debtor, its estate, all creditors of, and holders of equity interests in, Debtor, any holders of liens on the Assets (whether known or unknown), Buyer and all successors and assigns of Buyer, notwithstanding the dismissal of any of Debtor's case or any subsequent appointment of any trustees, examiners, "responsible persons" or other fiduciaries in the Bankruptcy Case or upon a conversion to chapter 7 under the Bankruptcy Code, and the Purchase Agreement shall not be subject to rejection or avoidance under any circumstances.

21.    _No Avoidance of Purchase Agreement_.  Neither Debtor nor Buyer have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.  Accordingly, the Purchase Agreement and the Sale shall not be avoidable under section 363(n), chapter 5 of the Bankruptcy Code, or under any other applicable laws of the United States, any state, territory or possession or the District of Columbia, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Purchase Agreement or the Sale.

22.    _Entire Purchase Agreement Approved_. The failure to specifically include any particular provisions of the Purchase Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, Debtor and Buyer that the Purchase Agreement is authorized and approved in its entirety with such amendments thereto as may be made by the parties in accordance with this Order.  Debtor and Buyer are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Order and the Purchase Agreement.

23.    _Nonseverable_.  The provisions of this Order are nonseverable and mutually dependent.

24.    _Immediate Effect_. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding any provision in the Bankruptcy Rules to the contrary, the terms of this Order shall be immediately effective and enforceable upon its entry and not subject to any

1    stay, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

2    25.    <u>Automatic Stay</u>.  Buyer shall not be required to seek or obtain relief from the

3    automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the

4    Purchase Agreement, documents or other instruments.  The automatic stay imposed by section 362

5    of the Bankruptcy Code is modified to the extent necessary to implement the provisions of the

6    Purchase Agreement and this Order.

7    26.    <u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction to, among other things,

8    interpret, implement, and enforce the terms and provisions of this Order, the Purchase Agreement,

9    and any and all amendments thereto, in connection with any disputes involving Debtor, and to

10    adjudicate, if necessary, any and all disputes concerning Debtor and related in any way to the Sale;

11    provided, however, that in the event the Court abstains from exercising or declines to exercise

12    jurisdiction or is without jurisdiction, such abstention, refusal or lack of jurisdiction shall have no

13    effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court

14    having competent jurisdiction with respect to any such matter.

# # #

3822.02    ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE ESTATE, etc.
**Error! Unknown document property name.**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

11766 Wilshire Blvd., Suite 450, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled **MOTION FOR ORDER APPROVING THE SALE OF THE DEBTOR'S CLAIMS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §363(b)(1) AND (f)(2); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF KATRINA SIRDOFSKY, DANIEL J. WEINTRAUB IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On October 24, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **N/A**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **N/A**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 24, 2022 | Yerika Ramirez | /s/ Yerika Ramirez |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

Alan J Friedman    afriedman@shulmanbastian.com, lgauthier@shulmanbastian.com
Gregory Kent Jones (TR)    gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com
Eve H. Karasik    ehk@lnbyg.com
Anna Landa    Anna@MarguliesFaithlaw.com, Helen@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com
Craig G Margulies    Craig@MarguliesFaithlaw.com, Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com
Ron Maroko    ron.maroko@usdoj.gov
Krikor J Meshefejian    kjm@lnbyg.com
Ryan D O'Dea    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com
James R Selth    jim@wsrlaw.net, jselth@yahoo.com;vinnet@ecf.inforuptcy.com
Michael A Shakouri    mshakouri@goodkinlaw.com, rnolan@pdv-llc.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
Daniel J Weintraub    dan@wsrlaw.net, vinnet@ecf.inforuptcy.com